IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **NIGHT VISION DEVICES, INC.**, *Plaintiff* <br><br> v. <br><br> **CARSON INDUSTRIES, INC.**, *Defendant* | Case No. 5:19-cv-04686-JDW |

## MEMORANDUM

Plaintiff Night Vision Devices ("Night Vision") seeks a preliminary injunction to enjoin its competitor Carson Industries from, among other things, selling dual tube digital night vision goggles ("BNVDs"). Night Vision asserts that Carson relied on Night Vision's own digital binocular night vision device to reverse-engineer its product in violation of a non-disclosure agreement between the Parties. However, because Night Vision has not shown that it will likely suffer irreparable harm, the Court will deny the Motion.

### I. FACTUAL BACKGROUND

Night Vision manufacturers and sells night vision equipment, including BNVDs. Defendant Carson Industries also manufacturers night vision equipment and component parts for night vision equipment. Carson is Night Vision's supplier, customer, and competitor.

Since 2015, Night Vision has allowed Carson to market Night Vision's BNVD to Carson's customers, provided Night Vision was not pursuing the same sales opportunity. In October 2017, Carson informed Night Vision that Carson had won an opportunity to sell 50 BNVDs in Colombia. In September 2018, Carson asked Night Vision for a sample BNVD, which featured Night Vision's new digital push button switch upgrade, in order to pursue another opportunity in Colombia. Around that time, Carson's Executive Vice-President allegedly told Night Vision's CEO that

Carson did not intend to build a BNVD. Based on that conversation, Night Vision provided Carson with a sample unit (the "Demo Unit"). In October 2018, Night Vision and Carson entered into a Non-Disclosure Agreement relating to the BNVD technology. Night Vision supplied Carso with a Demo Unit, which Carson retained from September 2018 through January 2019.

In May 2019, Carson again requested that Night Vision furnish the Demo Unit so that Carson could generate sales opportunities in Columbia. Carson then retained the Demo Unit from May 2019 until October 7, 2019, despite agreeing in its purchase order to return the unit on July 1, 2019, and despite repeated requests from Night Vision that Carson return it. When Night Vision inspected the just-returned Demo Unit, Night Vision suspected that Carson had disassembled the unit.

In September 2019, Carson introduced a new digital push button dual tube google design. Carson used the abbreviation "BNVD" for its product. Based on the timing of the introduction of Carson's night vision binoculars, Night Vision infers that Carson was working on the product's design while in possession of the Demo Unit. Night Vision also learned that Carson contacted the companies that supplied the optics and main circuit board for Night Vision's BNVD. Night Vision claims that Carson learned about the two vendors by taking apart the Demo Unit. Night Vision also alleges that Carson used the Demo Unit to reverse-engineer it and manufacture a competing product.

Night Vision filed a complaint against Carson on October 8, 2019. In the Complaint, Night Vision asserts three claims, for breach of the NDA, tortious interference with contract, and common law unfair competition. On October 11, 2019, Night Vision filed this Motion seeking a preliminary injunction. In its Motion, Night Vision asks the Court to enjoin Carson from 1) using Night Vision's confidential information in violation of the NDA; 2) acquiring optics or the main

circuit boards for use in a dual tube binocular night vision device from Night Vision's current suppliers, with whom Night Vision has exclusive supply agreements, and 3) selling, offering to sell, or demonstrating to customers and at trade shows a dual tube digital night vision goggle with the same look and feel as Night Vision's BNVD product or using the abbreviation "BNVD."

## II. LEGAL STANDARD

A preliminary injunction is an extraordinary remedy granted in limited circumstances. *See Ferring Pharm., Inc. v. Watson Pharm., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014). A plaintiff seeking a preliminary injunction must establish (1) a likelihood of success on the merits, (2) that he will likely suffer irreparable harm if the injunction is denied, (3) that granting preliminary relief will not result in even greater harm to the nonmoving party, and (4) that the public interest favors such relief. *See Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 131 (3d Cir. 2017). The first two factors are the "most critical," and a party seeking an injunction must satisfy them before the Court can considers the remaining factors. *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017).

## III. ANALYSIS

A plaintiff has the burden of making "a clear showing" that "immediate irreparable injury" is "likely" in the absence of relief. *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 142 (3d Cir. 2017). "This is not an easy burden." *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 485 (3d Cir. 2000). In order to prove irreparable harm, "a movant must demonstrate an injury that is neither remote nor speculative, but actual and imminent." *In re Revel AC, Inc.*, 802 F.3d 558, 571 (3d Cir. 2015) (citation omitted) (internal quotation marks omitted). Irreparable harm "must be of a peculiar nature, so that compensation in money alone cannot atone for it." *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 195 (3d Cir. 1990); *In re Revel AC, Inc.*, 802 F.3d at 571 ("The possibility that adequate compensatory or other corrective relief will be available at a later

date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.") (citation omitted) (internal quotation marks omitted).

In its Motion, Night Vision argues that it will suffer three distinct forms of irreparable harm absent a preliminary injunction. However, as explained below, the Court concludes that its argument fails as to each type of harm.

First, Night Vision argues that Carson's use of confidential information constitutes an irreparable harm in itself. Night Vision is correct that the "**potential** use of a company's confidential information is a type of injury which would constitute irreparable harm." ECF No. 3-2 at 22 (citing *Fisher Bioservices, Inc. v. Bilcare, Inc.*, No. CIV.A. 06-567, 2006 WL 1517382, at *20 (E.D. Pa. 2006)) (emphasis added). However, this dispute is not about the potential use of Night Vision's information. According to Night Vision, Carson has already used its confidential information. "Although disclosure of confidential information or trade secrets may constitute irreparable harm, the loss of the secret or confidential information must not have already occurred: once a secret is revealed, there is nothing for an injunction to protect." *Ace Am. Ins. Co. v. Wachovia Ins. Agency Inc.*, 306 F. App'x 727, 732 (3d Cir. 2009); *see also Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 92 (3d Cir. 1992) ("A threat of disclosure may establish immediate irreparable harm but "further" disclosure of something already revealed cannot.") The Court cannot put the toothpaste back in the tube.

Second, Night Vision claims that Carson is causing confusion in the marketplace, and therefore usurping Night Vision's goodwill and harming its reputation, by copying Night Vision's BNVD and using the abbreviation "BNVD." To satisfy its burden, Night Vision must offer evidence of the alleged confusion. It has not done so. It has not offered any expert affidavits or product surveys to show public confusion about the two products. It cites a single statement by

one person that the two products look similar and pictures of the two devices. A single stray comment does not prove sufficient confusion to justify a preliminary injunction. Nor does the use of the abbreviation "BNVD." Indeed, Night Vision itself notes that other companies and the U.S. Navy also use variations of that term. (ECF No. 3-2 at 13; ECF No. 20-1 at ¶ 63.) Finally, while there are similarities between the two products, they are physically distinguishable, at least based on the pictures provided to the Court.

Third, and finally, Night Vision complains that it will suffer harm in the form of lost opportunities. Night Vision has not offered any evidence to support that assertion. It has not shown any likely loss in sales or market share, let alone a causal connection between Carson's alleged transgression and such harms. Night Vision does claim that it missed out on an opportunity to market the BNVD to the Columbian government. That harm has already transpired, though, and is therefore not grounds for an injunction to prevent irreparable harm that is likely to occur in the future.

**IV.      CONCLUSION**

For the foregoing reasons, the Court denies Plaintiff's motion for a preliminary injunction. An appropriate Order follows.

                                                                             **BY THE COURT:**

                                                                             */s/ Joshua D. Wolson*
                                                                             JOSHUA D. WOLSON

Dated: January 28, 2020